UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ZANE JACK FIELDS,<br><br>     Petitioner,<br><br>v.<br><br>RANDY BLADES, Warden,<br><br>     Respondent. | Case No. 1:95-cv-00422-BLW<br><br>**CAPITAL CASE**<br><br>**MEMORANDUM DECISION AND ORDER** |

  Petitioner Zane Jack Fields murdered Mary Catherine Vanderford in 1988 and filed this habeas corpus action in 1995. Petitioner filed his initial Petition in 1997, his First Amended Petition in 2001, and his Second Amended Petition in 2012. (Dkt. 65, 89, 271.)

  Currently pending is Petitioner's Motion to Amend and proposed Third Amended Petition.[1] (Dkt. 327.) Having carefully reviewed the record, including the state court

---

[1]   Also pending is Petitioner's Motion to Reconsider the Court's March 31, 2015 denial of Petitioner's request for an evidentiary hearing on whether *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), applies to excuse the procedural default of certain claims of ineffective assistance of counsel. (Dkt. 342.) The Court will address that motion in a later ruling.

**MEMORANDUM DECISION AND ORDER - 1**

record, the Court concludes that oral argument is unnecessary. D. Idaho Loc. Civ. R. 9.2(h)(5). Accordingly, the Court enters the following Order denying Petitioner's Motion to Amend.

**1.      Standard of Law**

The Federal Rules of Civil Procedure apply to habeas corpus proceedings to the extent that they are not inconsistent with established habeas practice and procedure. *See* Rule 12 of the Rules Governing Section 2254 Cases. By statute, an application for habeas relief may be amended "as provided in the rules of procedure applicable to civil actions." 28 U.S.C. § 2242.

Federal Rule of Civil Procedure 15 governs the amendment of civil pleadings. Because Petitioner has previously amended his Petition and Respondent has not agreed to further amendment, Petitioner may now amend only with leave of court. Fed. R. Civ. P. 15(a)(2). "The Court should freely give leave when justice so requires." *Id.*

Although public policy favors amendment, a court retains the discretion to deny leave to amend after considering factors such as previous amendment, undue delay, bad faith, prejudice to the opposing party, and futility of amendment. *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995). These factors need not be given equal weight. *Id.*

In a habeas case that has been initiated after the enactment of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a request for leave to amend must also be construed in light of the provisions and policies of AEDPA, which is designed to promote finality, comity, and federalism. *Williams (Michael) v. Taylor*, 529 U.S. 420, 436 (2000).

**MEMORANDUM DECISION AND ORDER - 2**

**2.     Discussion**

For the following reasons, the Court concludes that the factors identified in *Bonin v. Calderon* weigh against allowing Petitioner to proceed on yet another amendment.

First, Petitioner has already amended his petition twice. Therefore, this factor weighs against allowing yet another amendment.

Second, this case has been rife with undue delay. A large part of this delay has been caused by Petitioner, and the Court has repeatedly expressed dissatisfaction with the slow pace of this litigation. The Court recognizes that some of the delay has been caused by the Court's massive caseload, the fact that one judge is responsible for all of this District's capital habeas corpus cases, and the District's lack of a full complement of judges. The Court also recognizes that Idaho's unique procedures in capital cases—intended supposedly to streamline litigation of those cases by consolidating direct appeal and initial post-conviction proceedings and by instituting short filing deadlines—only encourage the filing of multiple state post-conviction proceedings, which inevitably delay federal proceedings. Thus, the number of years this case has been pending and the number of post-conviction petitions filed by Petitioner in state court do not, by themselves, constitute undue delay.

However, the Court finds that Petitioner has been deliberately choosing to litigate this case more slowly than necessary. For example, the Court finds that most, if not all, of the additional allegations in the proposed amendment could have been discovered, in the exercise of reasonable diligence, prior to the filing of Petitioner's Second Amended Petition in 2012. For example, Petitioner states that, in late 2013, "an off-hand comment

**MEMORANDUM DECISION AND ORDER - 3**

in an inmate interview led to a significant break." (Dkt. 327-2 at 8.) This "break" came in the form of testimony from inmates and correctional officers regarding the layout and structure of the cell blocks in which the inmate witnesses testified that Petitioner confessed to them. However, the layout of the areas in which Petitioner was confined prior to trial is not a "new" fact—it was obviously known by Petitioner long before 2013.

Third, the bad faith factor—closely related to the undue delay factor in this case—weighs slightly against Petitioner, though this is not the worst case of gamesmanship the Court has ever seen. In arguing that the state would not be prejudiced by further amendment, Petitioner acknowledges that "the factual arguments raised in the proposed amendments" were known, at the very latest, when Petitioner filed his reply brief in support of his motion for an evidentiary hearing on procedural default—on February 6, 2014. (Dkt. 327-2 at 11; *see also* Dkt. 313.). Therefore, even if the Court were to accept the proposition that Petitioner could not have discovered the additional facts included in the proposed Third Amended Petition until February 2014—which, as explained above, it does not—Petitioner still waited to file his Motion to Amend until nearly 22 months later, on December 4, 2015.

Petitioner delayed filing his Motion to Amend and proposed Third Amended Petition until he received an adverse ruling from this Court. Tellingly, it was not until *after* the Court denied Petitioner's motion for an evidentiary hearing that Petitioner filed the Motion to Amend. The Court finds that this delay was intentional.

**MEMORANDUM DECISION AND ORDER - 4**

Fourth, the Court concludes that the prejudice factor is neutral. The state—and the efficient administration of justice—might indeed be prejudiced if litigation of this case had to start all over again, nearly thirty years after the murder of Mrs. Vanderford. However, it is of the utmost importance to ensure that Petitioner's conviction and sentence are constitutional, even if it takes many years to do so.

Finally, the futility of amendment factor weighs against Petitioner, in that the proposed amendments are either futile or unnecessary to the resolution of claims. The only entirely new claim in the proposed Third Amended Petition is Claim 45, which asserts that the death penalty is, in all cases, unconstitutional. Claim 45 relies Justice Breyer's dissenting opinion in *Glossip v. Gross*, in which the Justice opined that "the death penalty, in and of itself, now likely constitutes a legally prohibited 'cruel and unusual punishment.'" 135 S. Ct. 2726, 2756 (2015) (Breyer, J. dissenting) (quoting U.S. Const., amend. VIII) (alteration omitted).

The Court finds Claim 45 to be without merit, and thus amendment of the Petition to assert that claim would be futile. Justice Breyer's dissent in *Glossip* was joined by only one other Justice. There is absolutely no indication that a majority of the Supreme Court would conclude—contrary to the text of the Constitution—that there is no constitutional way that capital punishment can be imposed. The Due Process Clause provides that the government may not deprive a person of "*life*, liberty, or property, without due process of law." U.S. Const., amend. XIV, § 1 (emphasis added). A necessary implication of that

**MEMORANDUM DECISION AND ORDER - 5**

clause is that the government *may* deprive a person of life so long as that deprivation comports with due process. Therefore, amendment to add Claim 45 is futile.

Other amendments in the proposed Third Amended Petition are not strictly necessary, even if Petitioner intends to refer to the additional factual allegations in later briefing. The additional allegations are, for the most part, merely more specific than some of the allegations in the Second Amended Petition. For example, Claims 1 and 4 of the Second Amended Petition assert that unified post-conviction and direct appeal counsel rendered ineffective assistance and operated under a conflict of interest, having represented some of the trial witnesses against Petitioner. The proposed Third Amended Petition simply adds more detail to explain counsel's representation of those witnesses and more specifically describes the actions that counsel allegedly should have taken when investigating the case. (*See* Dkt. 327-1 at 32, Redline of proposed Third Am. Pet. at ¶¶ 210-30, 396-424.) It does not, however, change the nature of the claims or otherwise introduce a new substantive ground for relief.

Similarly, Claim 3(A) in the Second Amended Petition asserts that trial counsel "failed to attack the credibility of Edson and Bianchi by adequately investigating them, presenting impeachment witnesses and properly cross examining them," while the Third Amended Petition simply goes into more specific detail as to the these credibility, impeachment, and cross-examination issues. (*Id.* at ¶¶ 261, 263-70, 272.) The same is true with Petitioner's claims of ineffective assistance with respect to witnesses Joe Heistand and Jeff Acheson in Claims 3(A) and 3(F), as well as Petitioner's claim that

counsel failed to investigate witnesses that could rebut the inmate witnesses as set forth in Claim 3(L). (*Id*. at ¶¶ 286-88, 292-96, 309-10, 345-83.) These are just a few of the examples showing that the new, more specific allegations do not significantly add to Petitioner's claims.

Further, the more specific allegations in the proposed amendment—which merely add detail to claims already asserted—would not alter the way in which the Court will review Petitioner's claims. To the extent the state court adjudicated Petitioner's claims on the merits and relied on reasonable factual findings, the new, more detailed allegations cannot be supported by additional evidence that was not before the state court. *See Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) ("[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."). And to the extent the claims were not adjudicated on the merits in state court or are addressable in this Court despite a merits adjudication (e.g., if the procedural default of a claim is excused or if Petitioner satisfies the requirements of § 2254(d) as to a claim), the evidence supporting the more specific allegations in the proposed amendment is already in this Court's record—Petitioner submitted that evidence in support of his motion for an evidentiary hearing. (*See* Dkt. 275-2 to 275-22; Dkt. 313-1 to 313-16.)

For the foregoing reasons, the Court concludes, in the exercise of its discretion after a careful review of the proposed Third Amended Petition, that the *Bonin* factors weigh against allowing further amendment in this case. Therefore, the Court will deny Petitioner's Motion to Amend.

**MEMORANDUM DECISION AND ORDER - 7**

## ORDER

IT IS ORDERED:

1. Petitioner's Motion to Amend (Dkt. 327) is DENIED.

2. Supplemental briefing on the merits of most of the non-defaulted claims in the Second Amended Petition is now complete, and the Court will issue a decision on those claims in due course. Because the procedural default status of Claims 1, 6, 11, and 44 was less clear than that of other claims, which are plainly not defaulted, the Court bifurcated briefing so that those claims could be briefed separately. (*See* Dkt. 322.) The Court finds that the procedural default status of those claims should be briefed while the Court considers Petitioner's pending Motion for Reconsideration and the merits of Petitioner's other non-defaulted claims.

3. Therefore, **within 60 days** after entry of this Order, Respondent may—if he so chooses—file a motion to dismiss Claims 1, 6, 11, and 44 on any ground supported by the record. If Respondent chooses not to file such a motion, he shall immediately notify the Court and Petitioner, and the Court will enter an order governing the merits briefing of those claims.

4. Petitioner's response to any motion to dismiss Claims 1, 6, 11, or 44 shall be filed no later than **60 days** after service of Respondent's motion.

5. Respondent's reply in support of any motion to dismiss Claims 1, 6, 11, and 44 shall be filed no later than **30 days** after service of Petitioner's response.

6. Because the Court has already determined that it will not address the actual innocence exception to procedural default until after it has considered the merits of Petitioner's non-defaulted claim, the parties may incorporate their previous arguments with respect to that exception.

7. Because any motion to dismiss Claims 1, 6, 11, and 44—if Respondent files one—will address only four claims, no motions to file overlength briefs or motions for extensions of time will be entertained.

DATED: **November 28, 2016**

B. Lynn Winmill
Chief Judge
United States District Court

**MEMORANDUM DECISION AND ORDER - 9**